**THE ALVAREZ FIRM, A Law Corporation**
**DAVID A. SHANEYFELT, State Bar No. 240777**
dshaneyfelt@alvarezfirm.com
**JUSTIN M. ALVAREZ, State Bar No. 223472**
jalvarez@alvarezfirm.com
**PAUL M. DIPIETRO, State Bar No. 287296**
pdipietro@alvarezfirm.com
24005 Ventura Boulevard
Calabasas, California 91302
Tel: (818) 224-7077
Fax: (818) 224-1380

Attorneys for Plaintiffs Phoenix Holding Group, LLC and Phoenix Warehouse of California, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOENIX HOLDING GROUP, LLC, a New Jersey limited liability company, and PHOENIX WAREHOUSE OF CALIFORNIA, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> GREENWICH INSURANCE COMPANY, a Delaware corporation, and THE DORFMAN ORGANIZATION, LTD., a New York corporation, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT** FOR: <br><br> 1. Declaratory Relief <br> 2. Breach of Contract <br> 3. Breach of the Covenant of Good Faith and Fair Dealing <br> 4. Breach of Contract <br> 5. Breach of the Covenant of Good Faith and Fair Dealing <br> 6. Breach of Contract <br> 7. Breach of the Covenant of Good Faith and Fair Dealing <br> 8. Professional Negligence |

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

**INTRODUCTION**

This action is an insurance coverage suit which alleges declaratory and breach of contract relief against an insurance company and alternative theories of professional negligence against an insurance broker.

In December, 2012, Plaintiff Phoenix Holding Group, LLC ("Phoenix Holding"), through the assistance of its insurance broker, The Dorfman Organization, Ltd. ("Dorfman"), purchased an employment practices liability insurance policy from Defendant Greenwich Insurance Company ("Greenwich"). The policy was intended to cover Phoenix Holding's subsidiary, Plaintiff Phoenix Warehouse of California LLC ("Phoenix California").

Beginning in March, 2013, and thereafter, Phoenix California was named as a defendant in several actions, including class actions, alleging multiple claims under the California Labor Code. After the first two such actions were filed, Dorfman tendered defense of one suit to Greenwich, which advised that Phoenix California was not covered under Phoenix Holding's policy. Dorfman then arranged for a new policy to be issued from Greenwich that would cover both entities, but it was limited to prospective claims only. Thereafter, Phoenix California was named as a defendant in four more suits. Upon tender to XL, Greenwich denied coverage of two class action suits on grounds they arose before the new policy was issued. Thus, Phoenix California has been required to undertake its own defense and settlement efforts for four actions altogether. Phoenix California has settled one of those suits; the others remain pending and Greenwich denies any duty to defend Phoenix California against them or to indemnify it for any future settlement or judgment.

Phoenix California contends it is entitled to defense and indemnity for those actions under the Greenwich policies. In the alternative, if Phoenix California is

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

not covered under the Greenwich policies, then Dorfman is liable to Phoenix for the benefits it otherwise was entitled to receive under those policies, and for its attorneys' fees in being forced to bring this coverage action against Greenwich.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. §1332(a).

2.  Venue is proper within this district under 28 U.S.C. §1391(b)(1).

## PARTIES

3.  Plaintiff Phoenix Holding Group, LLC ("Phoenix Holding") is a New Jersey limited liability company with its principal place of business located in Jersey City, New Jersey.  Phoenix Holding's members include Chris Antonucci and Alan Antonucci, both of whom are citizens of New Jersey.

4.  Plaintiff Phoenix Warehouse of California, LLC ("Phoenix California") is a California limited liability company with its principal place of business located in Cerritos, California.  Phoenix California's members include Chris Antonucci, Alan Antonucci, and Phoenix Holding.

5.  Defendant Greenwich Insurance Company ("Greenwich") is a Delaware corporation with its principal place of business in Stamford, Connecticut.

6.  For all relevant purposes herein, Greenwich acts through its claims handling agent, "XL Professional – Hartford" ("XL"), and XL's agents, who are located in Hartford, Connecticut.  As claims manager for Greenwich, all actions of XL and its agents are attributable to Greenwich as principal.

7.  Defendant The Dorfman Organization Ltd. ("Dorfman") is a New York Corporation, with its principal place of business in Brooklyn Heights, New York.

**GENERAL ALLEGATIONS**

### A.    The Initial Policy.

8.    Phoenix Holding and Phoenix California (jointly, "Phoenix") are in the business of providing warehouse and distribution space to meet the needs of transportation distributors. Phoenix California operates, and has operated, facilities in Cerritos, La Mirada, and Santa Fe Springs, California.

9.    For more than twenty years, Dorfman has been serving as insurance broker for Phoenix and one or more of its affiliate and predecessor entities.

10.    In late, 2012, Dorfman recommended that Phoenix switch from its then-current coverages with Travelers Insurance Company ("Travelers") to Greenwich. At the time, Phoenix was covered under a "wrap+" insurance policy with Travelers that included employment practices liability ("EPL") coverage. The Travelers policy listed Phoenix Holding as the named insured, and it expressly covered its two subsidiaries, Phoenix California and Phoenix Warehouse of New Jersey, LLC ("Phoenix New Jersey").

11.    Phoenix agreed with Dorfman's recommendation to switch from Travelers to Greenwich, and thus on December 11, 2012, Greenwich sold an EPL policy (No. ABD9776088-00) to Phoenix Holding as named insured for the period December 3, 2012, to December 3, 2013 (the "Initial Policy"). Like the Travelers Policy, the Initial Policy was a claims-made and reported policy that provided $1 million in coverage, subject to a $25,000 retention.

12.    The Initial Policy made no reference to Phoenix New Jersey or Phoenix California, but both entities were contemplated as being within the coverage requested from, and granted by, Greenwich.

13.    Moreover, the Initial Policy expressly purported to cover Phoenix California. Section III.K defined "Insured(s)" as the "**Company**." Section III.c

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

3

defines "**Company**" as the entity in Item 1 of the Declarations and any "**Subsidiary**." The entity in Item 1 is Phoenix Holding. Section III.P defines "**Subsidiary**" as any entity the **Company** owned on or before the policy inception date (which was 12/03/12). Phoenix Holding had majority ownership of Phoenix California since 1997. Accordingly, Phoenix California was a **Subsidiary** and therefore an "Insured" under the Initial Policy.

14.     Item 6 of the Declarations provided for no "Retroactive Date." This Item was tied to Section IV.A which excluded from coverage "any actual or alleged **Wrongful Act** that occurred or began prior to the Retroactive Date specified in Item 6 of the Declarations, if applicable." In other words, the Initial Policy offered potential coverage for any covered claim made and reported within the policy period, even though an alleged **Wrongful Act** on which the claim was based may have occurred *at any time before* the policy period.

**B.     The Revised Policies.**

15.     On March 21, 2013, a putative class action was filed against Phoenix California under the caption, *Espinoza v. Phoenix Warehouse of California, LLC,* No. BC 503678, in Los Angeles Superior Court alleging causes of action under the California Labor Code and related statutes (the "Espinoza Class Action").

16.     On March 27, 2013, three individuals filed suit against Phoenix California under the caption, *Duron v. Phoenix Warehouse of California, LLC*, No. BC504139, in Los Angeles Superior Court alleging causes of action under the California Labor Code and related statutes (the "Duron Action").

17.     Dorfman first learned of the Espinoza Class Action and the Duron Action in April, 2013.

18.     On April 26, 2013, Dorfman tendered the Duron Action to Greenwich.

4

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

19.     On information and belief, XL advised Dorfman that no coverage existed for the Duron Action, claiming that Phoenix California was entitled to no benefits as a "Named Insured" under the Initial Policy.  Dorfman never advised Phoenix of XL's decision.

20.     Phoenix does not know whether Dorfman tendered the Espinoza Class Action to Greenwich or whether Dorfman understood this to be a futile act, in view of Greenwich's position regarding the Duron Action.  Phoenix alleges, on information and belief, that if Dorfman had tendered the Espinoza Class Action to Greenwich in late April/early May, 2013, Greenwich would have rejected that tender on the same grounds it rejected tender of the Duron Action, namely, that Phoenix California was not an "insured" under the Initial Policy.

21.     In any case, Dorfman never advised Phoenix of XL's decision regarding the Duron Action (or, if made, XL's decision regarding the Espinoza Class Action).  Instead, three days later, on April 29, 2013, Dorfman tendered the Espinoza Action to Phoenix's former insurance company, Travelers.  By letter dated May 29, 2013, Travelers rejected the tender on grounds that the claim was filed after the Travelers policy had expired.

22.     On information and belief, because XL advised Dorfman that Phoenix California was not an "insured" under the Initial Policy, Dorfman requested that Greenwich issue a new policy that would replace the Initial Policy and provide EPL coverage for Phoenix California.  Dorfman did so on May 9, 2013, but without advising Phoenix of XL's position and without advising of its intent to replace the Initial Policy.

23.     Greenwich, however, had no need to replace the Initial Policy to add Phoenix California as a named insured, because Phoenix California was already an "insured" under the Initial Policy.

**COMPLAINT**

24.     Nevertheless, on June 3, 2013, Greenwich issued EPL Policy No. ABD977613-00 to Named Insureds Phoenix Holding and Phoenix California for the period May 13, 2013, to December 3, 2013 (the "California Policy"). Like the Initial Policy, the California Policy was a claims-made and reported policy that provided $1 million in coverage, subject to a $25,000 retention. But unlike the Initial Policy, it specified a "Retroactive Date" in Item 6: 5/13/13 (the "Retroactive Date"). The Policy reiterated this Date in an endorsement captioned, "Retroactive Date Endorsement," that was *not* included in the Initial Policy, and expressed what Section IV.A of the Policy already made clear, namely that no coverage existed for any alleged "**Wrongful Act** committed or alleged to have been committed prior to 05/13/2013."

25.     Accordingly, if no coverage existed for the Espinoza Class Action and Duron Action under the Initial Policy, no coverage could exist for those Actions under the California Policy, because they incepted before the Retroactive Date.

26.     Greenwich wrongly issued the California Policy, because Greenwich sought to avoid defense and indemnity obligations as to the Espinoza Class Action and the Duron Action.

27.     If Phoenix California is not entitled to benefits as an "insured" under the Initial Policy, then Greenwich issued the California Policy wrongly intending to deprive Phoenix California of defense and indemnity benefits for the Espinoza Class Action and the Duron Action.

28.     Greenwich is estopped from invoking the Retroactive Date to bar coverage of the Espinoza Class Action and the Duron Action.

**C.     Subsequent Actions And Subsequent Policy Renewals.**

29.     On June 26, 2013, a second putative class action was filed against Phoenix California under the caption, *Ramos v. Fairway Staffing Services*, No. BC

6

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

512859, in Los Angeles Superior Court alleging claims under the California Labor Code and related statutes (the "Ramos Class Action").

30.     Phoenix was unaware of the Ramos Class Action until December, 2013, after which it advised XL of it and, through Dorfman, subsequently tendered defense of it.  XL, however, rejected that tender on grounds that, among others, the Retroactive Date Endorsement barred coverage of it, because the Action alleged "Wrongful Acts" committed before the Retroactive Date.

31.     In December, 2013, the California Policy was renewed according to the same terms and conditions (the "Renewal Policy").  The Policy was for the period December 3, 2013, to December 3, 2014, and retained the same Retroactive Date.

32.     On December 18, 2013, within the policy period for the Renewal Policy, an individual action was filed against Phoenix California under the caption, *Ramos v. Fairway Staffing Services*, No. BC 530851, in Los Angeles Superior Court, alleging causes of action under the California Labor Code and related statutes (the "Ramos Wrongful Term Action").

33.     On February 14, 2014, Dorfman tendered the Ramos Wrongful Term Action to XL on behalf of Phoenix California.  On July 2, 2014, XL accepted tender of the Action under a reservation of rights.

34.     On May 20, 2014, again within the policy period for the Renewal Policy, an individual action was filed against Phoenix California under the caption, *Ochoa v. Fairway Staffing Services*, No. BC 546248, in Los Angeles Superior Court, alleging causes of action under the California Labor Code and related statutes (the "Ochoa Action").

**COMPLAINT**

35.     On June 6, 2014, Dorfman tendered the Ochoa Action to XL on behalf of Phoenix California.   On June 23, 2014, XL accepted tender of the Action under a reservation of rights.

36.     On June 19, 2014, again within the policy period for the Renewal Policy, a putative class action was filed against Phoenix California under the caption, *Villa v. Phoenix Warehouse of California*, LLC, No. BC 540172, in Los Angeles Superior Court, alleging causes of action under the California Labor Code and related statutes (the "Villa Class Action").

37.     On June 30, 2014, Dorfman tendered the Villa Class Action to XL on behalf of Phoenix California.   On July 2, 2014, XL rejected that tender on grounds that, among others, the Retroactive Date Endorsement barred coverage of it, because the Action alleged "Wrongful Acts" committed before the Retroactive Date.

38.     In sum, XL denied tenders of the Espinoza Class Action, the Duron Action, the Ramos Class Action, and the Villa Class Action (the "Class Actions") for the same essential reason, among others – each of the Actions alleged "Wrongful Acts" committed before the Retroactive Date.

39.     Because Greenwich wrongly included the Retroactive Date in the California Policy and the Renewal Policy, Greenwich is estopped from invoking the Retroactive Date to deny coverage for the Class Actions.

    **D.     Wrongful Acts.**

40.     XL denied tenders of the Class Actions for a second reason.   XL contends that none of the claims alleged in those Actions alleges a "Wrongful Employment Act."

41.     Section III.U of the Policies defines "Wrongful Employment Act" to include 13 enumerated acts including:  [6] "breach of . . . implied employment

**COMPLAINT**

contract," and [7] "failure to enforce employment-related policies and procedures relating to any "Wrongful Employment Act.""

42.  The provisions of the California Labor Code are implied terms in every employment contract.

43.  Each of the Class Actions alleges claims under the California Labor Code.

44.  Each of the Class Actions alleges a "Wrongful Employment Act," because each of those Actions alleges a breach of an "implied employment contract," and a "failure to enforce employment-related policies and procedures relating to any 'Wrongful Employment Act.'"

**E.    Covered Claims.**

45.  XL denied tenders of the Class Actions for a third reason.  XL contends that each of those Actions alleges claims that are excluded from coverage under Section IV.G of the Policies.  That section (the "FLSA Exclusion") provides that Greenwich will not be liable for any "Loss" regarding any "Claim" "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Fair Labor Standards Act, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state, or local statutory wage and hour law."

46.  The FLSA Exclusion does not apply to one or more claims alleged in the Class Actions.

47.  Each of the Class Actions alleges the following claims against Phoenix California:

(a)    Lost overtime under California Labor Code ("L.C.") §510 (or 1194, 1199);

(b)    Lost meal periods under L.C. §226.7;

9

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(c)     Lost rest periods under L.C. §226.7;

(d)     Failure to provide itemized wage statements under L.C. §226(a);

(e)     Failure to provide wages due on termination under L.C. §203;

(f)     Unfair competition under Cal. Bus. & Prof. Code §17200.

48.     The Fair Labor Standards Act of 1938 ("FLSA"), Pub. L. 75-718, 29 U.S.C. ch. 8, authorizes claims for (a) failure to pay minimum wage, see 29 U.S.C. §206; (b) failure to pay overtime wages, see 29 U.S.C. §207; and (c) employment of child labor, see 29 U.S.C. §212.

49.     A claim for lost overtime under L.C. §§510, 1194, or 1199 is a claim based on an alleged violation of the FLSA "or similar provisions of any . . . state . . . statutory wage and hour law," because the provisions of L.C. §510, 1194, and 1199 are similar to those of 29 U.S.C. §207.

50.     A claim for lost meal periods under L.C. §226.7 is *not* a claim based on an alleged violation of the FLSA "or similar provisions of any . . . state . . . statutory wage and hour law," because the FLSA has no provision authorizing claims for lost meal periods, and because the provisions of L.C. §226.7 are not similar to any provisions of the FLSA.

51.     A claim for lost rest periods under L.C. §226.7 is *not* a claim based on an alleged violation of the FLSA "or similar provisions of any . . . state . . . statutory wage and hour law," because the FLSA has no provision authorizing claims for lost rest periods, and because the provisions of L.C. §226.7 are not similar to any provisions of the FLSA.

52.     A claim for failure to provide itemized wage statements under L.C. §226(a) is *not* a claim based on an alleged violation of the FLSA "or similar provisions of any . . . state . . . statutory wage and hour law," because the FLSA has no provision authorizing claims for failure to provide itemized wage

10

**COMPLAINT**

statements, and because the provisions of L.C. §226.7 are not similar to any provisions of the FLSA.

53.     A claim for failure to provide wages due on termination under L.C. §203 is *not* a claim based on an alleged violation of the FLSA "or similar provisions of any . . . state . . . statutory wage and hour law," because the FLSA has no provision authorizing claims for failure to pay wages due on termination, and because the provisions of L.C. §203 are not similar to any provisions of the FLSA.

54.     Each of the Class Actions alleging violations of section 17200 of the Cal. Business & Profession Code are derivative of the Labor Code claims. Thus, to the extent a Labor Code claim is covered, or not covered, under the Greenwich Policies, to the same extent will any section 17200 derivative claim be covered, or not covered, under those Policies.

### E.     Defense For Non-Covered Claims.

55.     The Initial Policy included an endorsement, captioned, "Fair Labor Standards Act Coverage Endorsement," (the "FLSA Endorsement") purporting to provide up to $100,000 for "Defense Costs" incurred in defending against claims otherwise excluded by the FLSA Exclusion. This provision therefore provides a $100,000 sublimit for defense costs incurred solely in relation to otherwise excluded claims.

56.     In other words, the FLSA Endorsement entitles Phoenix California to $100,000 for "Defense Costs" of a claim for lost overtime under L.C. §§510, 1194, or 1199, because that claim is excluded by the FLSA Exclusion.

57.     As to claims that are not excluded by the FLSA Exclusion, the Initial Policy entitles Phoenix California to policy limits of $1 million for "Defense Costs" incurred in defense of those claims.

11

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

58.     Further, Section V.E of the Policy expressly provides that Greenwich "will pay one hundred percent (100%) of Defense Costs" for defense of a claim involving "both covered and not covered" "Loss."

59.     Phoenix California is entitled to benefits under the Initial Policy for the Espinoza Class Action and the Duron Action, because those claims were both made and reported to Greenwich within the policy period.

60.     Because the Espinoza Class Action and the Duron Action alleged both covered and non-covered claims, Phoenix California is entitled to 100% of "Defense Costs" incurred in defense of those two actions, subject to policy limits of $1 million.

61.     The FLSA Endorsement was not included in the California Phoenix Policy that incepted on May 13, 2013.

62.     Greenwich intentionally omitted the FLSA Endorsement from the California Phoenix Policy, because Greenwich had since become aware of the Espinoza Class Action and the Duron Action and did not wish to provide Phoenix California with $100,000 in defense costs for otherwise excluded claims.

63.     Moreover, after discovering the existence of the Espinoza Class Action and the Duron Action, Greenwich caused to be issued the California Policy which included the Retroactive Date.  But for the existence of those Actions, Greenwich would have not included any retroactive date in the California Policy or the Renewal Policy.  In other words, the California Policy and the Renewal Policy would have preserved Item 6 of the Declarations in the Initial Policy.

64.     But for Greenwich's inclusion of the Retroactive Date in the California Policy, Phoenix California would have been entitled to 100% of its defense costs up to policy limits of $1 million for each of two policy periods for all of the actions filed against Phoenix California – the Espinoza Class Action, the

The Alvarez Firm, a Law Corp.
2005 Ventura Blvd.
Calabasas, CA 91302

12

Duron Action, the Ramos Class Action, the Ramos Wrongful Term Action, the Ochoa Action, and the Villa Class Action.

65.     Even apart from Greenwich's inclusion of the Retroactive Date in the California Policy, Phoenix California is entitled to $100,000 in "Defense Costs" incurred in defense of the Espinoza Class Action and the Duron Action under the Initial Policy, because those claims were made and reported in that policy period.

66.     Phoenix California is entitled to 100% of its defense costs up to policy limits of $1 million for the Ramos Class Action under the California Policy, because that claim was made and reported within that policy period.  The "Retroactive Date" provision, even if Greenwich is not estopped from invoking it, is not a bar to this claim, because of the possibility that some of the claims within the Ramos Class Action arose after the "Retroactive Date."

67.     Phoenix California is entitled to 100% of its defense costs up to policy limits of $1 million for the Villa Class Action under the Renewal Policy, because that claim was made and reported within that policy period.  The "Retroactive Date" provision, even if Greenwich is not estopped from invoking it, is not a bar to this claim, because of the possibility that some of the claims within the Villa Class Action arose after the "Retroactive Date."

### F.     Underlying Claims.

68.     The Espinoza Class Action remains pending.  Phoenix California has incurred costs in defense of that Action in excess of its retention.  XL has refused tender of the defense, it refuses to reimburse Phoenix California for defense costs, and it denies it has any obligation to indemnify Phoenix California for any settlement or judgment.

69.     The Duron Action has settled.  Under formal settlement agreement, Phoenix California agreed to pay the plaintiffs in that action $235,000.  Phoenix

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

13

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

California also incurred more than $100,000 in defense costs. XL has refused tender of the defense, it refuses to indemnify Phoenix California for the settlement.

70.     The Ramos Class Action remains pending. Phoenix California has incurred costs in defense of that Action in excess of its retention. XL has refused tender of the defense, it refuses to reimburse Phoenix California for defense costs, and it denies it has any obligation to indemnify Phoenix California for any settlement or judgment.

71.     The Ramos Wrongful Term Action has settled. XL accepted tender of the defense of that Action and indemnified Phoenix California for the settlement.

72.     The Ochoa Action has settled. XL accepted tender of the defense of that Action and indemnified Phoenix California for the settlement.

73.     The Villa Class Action remains pending. Phoenix California has incurred costs in defense of that Action in excess of its retention. XL has refused tender of the defense, it refuses to reimburse Phoenix California for defense costs, and it denies it has any obligation to indemnify Phoenix California for any settlement or judgment.

74.     Thus, of the six actions filed, XL accepted coverage of two under a reservation of rights, and denied coverage duties to four. Of those four (the "Class Actions"), one has settled (the Duron Action), and three remain pending (the Espinoza Class Action, the Ramos Class Action, and the Villa Class Action).

**G.     Additional Relevant Policy Provisions.**

75.     The Initial Policy, the California Policy, and the Renewal Policy (jointly, "Policies") all contain the same Insuring Agreement, Section I.A . Under that Section, Greenwich promised to pay Phoenix California "Loss in excess of the applicable Retention arising from a Wrongful Employment Act committed prior to the expiration date of the Policy provided the Employment Claim is first made

14

against an Insured during the Policy Period (or Extended Reporting Period, if applicable)."

76.     The Policies contain a Section III.T, which defines "Wrongful Act(s)" as any "Wrongful Employment Act."

77.     The Policies contain a Section III.M, which defines "Loss" to include "Damages and Defense Costs."

78.     The Policies contain a Section III.D, which defines "Damage" to include any amount Phoenix is "legally obligated to pay solely as a result of a Claim, including judgments, pre-and post-judgment interest, settlements, . . . compensatory damages, [and] statutory attorneys' fees. . .."

79.     The Policies contain a Section III.E, which defines "Defense Costs" as "reasonable and necessary legal fees (including but not limited to attorneys' fees and experts' fees) and those expenses consented to by [Greenwich] that are incurred in the defense of a Claim . . .."

**FIRST CAUSE OF ACTION**
**FOR DECLARATORY RELIEF**
**(Against Greenwich)**

80.     Phoenix incorporates paragraphs 1 through 79 above.

81.     Declaratory relief is available under 28 U.S.C. § 2201 for cases of actual controversy relating to the legal rights and duties of the respective parties. Its purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation.

82.     An actual, substantial, and justiciable controversy has arisen and presently exists between Phoenix and Greenwich concerning Greenwich's duties to defend and indemnify Phoenix California against the Class Actions, specifically:

(1)     Whether Phoenix California is an "insured" under the Initial Policy;

15

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(2)     If Phoenix California is not an "insured" under the Initial Policy, whether Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the California Policy for the Espinoza Class Action and the Duron Action;

(3)     If Phoenix California is not an "insured" under the Initial Policy, whether Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the California Policy for the Ramos Class Action;

(4)     If Phoenix California is not an "insured" under the Initial Policy, whether Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the Renewal Policy for the Villa Class Action;

(5)     Whether any claims alleged in the Class Actions alleges a "Wrongful Employment Act" under the respective Policies;

(6)     Whether the FLSA Exclusion excludes any of the following claims made in the Class Actions:

(a)     Lost overtime under L.C §§ 510, 1194, or 1199;

(b)     Lost meal periods under L.C. §226.7;

(c)     Lost rest periods under L.C. §226.7;

(d)     Failure to provide itemized wage statements under L.C. §226(a);

(e)     Failure to provide wages due on termination under L.C. §203;

(f)     Unfair competition under Cal. Bus. & Prof. Code §17200.

(6)     Whether the FLSA Endorsement under the Initial Policy entitled Phoenix California to $100,000 in "Defense Expenses" for claims excluded by the FLSA Exclusion;

16

**COMPLAINT**

(7)   Whether Greenwich is estopped from denying Phoenix California $100,000 in "Defense Expenses" for claims excluded by the FLSA Exclusion and that otherwise were made and reported within the periods for the California Policy and the Renewal Policy;

(8)   Whether Greenwich is estopped from including the Retroactive Date in the California Policy and the Renewal Policy;

(9)   Whether the Retroactive Date, assuming it is enforceable, bars coverage of the Ramos Class Action or the Villa Class Action, to the extent those Actions include claims arising after the Retroactive Date.

## SECOND CAUSE OF ACTION
## FOR BREACH OF CONTRACT
### (Against Greenwich for the Espinoza Class Action and Duron Action)

83.   Phoenix incorporates paragraphs 1 through 82 above.

84.   The Espinoza Class Action and the Duron Action allege a "Wrongful Act" under Section III.U of the Initial Policy, because they allege a breach of an "implied employment contract," and a "failure to enforce employment-related policies and procedures relating to any 'Wrongful Employment Act."

85.   Phoenix California has incurred Damages and Defense Costs in relation to the Espinoza Class Action and the Duron Action.

86.   Phoenix California has met all conditions precedent under the Initial Policy.  Phoenix California has asked Greenwich to pay it for Loss incurred in relation to the Espinoza Class Action and the Duron Action, and Greenwich has refused to so pay it.  Phoenix California is harmed by Greenwich's failure to so pay it.

87.   Greenwich is in breach of the Initial Policy in refusing to pay Phoenix for Loss incurred in relation to the Espinoza Class Action and the Duron Action.

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

### THIRD CAUSE OF ACTION
### FOR BREACH OF THE COVENANT
### OF GOOD FAITH AND FAIR DEALING
**(Against Greenwich for the Espinoza Class Action and Duron Action)**

88.  Phoenix incorporates paragraphs 1 through 87 above.

89.  An implied covenant of good faith and fair dealing is implicit in an insurance contract.  An insurer breaches that covenant when the insurer unreasonably or without proper cause refuses to honor its duty to defend the insured or its duty to indemnify the insured under the insurance policy.

90.  An implied covenant of good faith and fair dealing is implicit in the Initial Policy.

91.  Greenwich breached its implied covenant of good faith and fair dealing arising out of the Initial Policy in the following respects –

(a)  By claiming unreasonably and without proper cause that Phoenix California was not an "insured" under the Policy;

(b)  By claiming unreasonably and without proper cause that the Espinoza Class Action and the Duron Action failed to allege "Wrongful Acts" under the Policy;

(c)  By refusing to defend Phoenix California against the Espinoza Class Action and the Duron Action;

(d)  By refusing to pay Phoenix California "Loss" in relation to the Espinoza Class Action and the Duron Action;

(e)  By issuing the California Policy as a replacement for the Initial Policy and including the Retroactive Date in it.

92.  Where a policyholder mounts a defense at the policyholder's own expense following the insurance company's refusal to defend, the policyholder is entitled to obtain as damages the costs of the defense.

93.     An insurance company that has breached an implied covenant to a policyholder is liable to the policyholder for all reasonable and necessary attorneys' fees that the policyholder incurs to recover policy benefits.

94.     As a direct and proximate result of Greenwich's conduct, Phoenix California has been required to retain attorneys to obtain its rightful benefits under the Initial Policy.

## FOURTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT
### (Against Greenwich for the Ramos Class Action)

95.     Phoenix incorporates paragraphs 1 through 94 above.

96.     The Ramos Class Action alleges a "Wrongful Act" under Section III.U of the California Policy, because it alleges a breach of an "implied employment contract," and a "failure to enforce employment-related policies and procedures relating to any 'Wrongful Employment Act.'"

97.     Phoenix California has incurred Damages and Defense Costs in relation to the Ramos Class Action.

98.     Phoenix California has met all conditions precedent under the California Policy.  Phoenix California has asked Greenwich to pay it for Loss incurred in relation to the Ramos Class Action, and Greenwich has refused to so pay it.  Phoenix California is harmed by Greenwich's failure to so pay it.

99.     Greenwich is in breach of the California Policy in refusing to pay Phoenix for Loss incurred in relation to the Ramos Class Action.

## FIFTH CAUSE OF ACTION
## FOR BREACH OF THE COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Against Greenwich for the Ramos Class Action)

100.    Phoenix incorporates paragraphs 1 through 99 above.

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

19

**COMPLAINT**

101.   An implied covenant of good faith and fair dealing is implicit in an insurance contract.  An insurer breaches that covenant when the insurer unreasonably or without proper cause refuses to honor its duty to defend the insured or its duty to indemnify the insured under the insurance policy.

102.   An implied covenant of good faith and fair dealing is implicit in the California Policy.

103.   Greenwich breached its implied covenant of good faith and fair dealing arising out of the California Policy in the following respects –

(a)   By claiming unreasonably and without proper cause that the Ramos Class Action failed to allege "Wrongful Acts" under the Policy;

(b)   By claiming unreasonably and without proper cause that the Ramos Class Action was barred by the Retroactive Date;

(c)   By refusing to defend Phoenix California against the Ramos Class Action;

(d)   By refusing to pay Phoenix California "Loss" in relation to the Ramos Class Action.

104.   Where a policyholder mounts a defense at the policyholder's own expense following the insurance company's refusal to defend, the policyholder is entitled to obtain as damages the costs of the defense.

105.   An insurance company that has breached an implied covenant to a policyholder is liable to the policyholder for all reasonable and necessary attorneys' fees that the policyholder incurs to recover policy benefits.

106.   As a direct and proximate result of Greenwich's conduct, Phoenix California has been required to retain attorneys to obtain its rightful benefits under the California Policy.

**COMPLAINT**

### SIXTH CAUSE OF ACTION
### FOR BREACH OF CONTRACT
**(Against Greenwich for the Villa Class Action)**

107. Phoenix incorporates paragraphs 1 through 106 above.

108. The Villa Class Action alleges a "Wrongful Act" under Section III.U of the Renewal Policy, because it alleges a breach of an "implied employment contract," and a "failure to enforce employment-related policies and procedures relating to any 'Wrongful Employment Act."

109. Phoenix California has incurred Damages and Defense Costs in relation to the Villa Class Action.

110. Phoenix California has met all conditions precedent under the Renewal Policy. Phoenix California has asked Greenwich to pay it for Loss incurred in relation to the Villa Class Action, and Greenwich has refused to so pay it. Phoenix California is harmed by Greenwich's failure to so pay it.

111. Greenwich is in breach of the Renewal Policy in refusing to pay Phoenix for Loss incurred in relation to the Villa Class Action.

### SEVENTH CAUSE OF ACTION
### FOR BREACH OF THE COVENANT
### OF GOOD FAITH AND FAIR DEALING
**(Against Greenwich for the Villa Class Action)**

112. Phoenix incorporates paragraphs 1 through 111 above.

113. An implied covenant of good faith and fair dealing is implicit in an insurance contract. An insurer breaches that covenant when the insurer unreasonably or without proper cause refuses to honor its duty to defend the insured or its duty to indemnify the insured under the insurance policy.

114. An implied covenant of good faith and fair dealing is implicit in the Renewal Policy.

21

115.   Greenwich breached its implied covenant of good faith and fair dealing arising out of the Renewal Policy in the following respects –

   (a)   By claiming unreasonably and without proper cause that the Villa Class Action failed to allege "Wrongful Acts" under the Policy;

   (b)   By claiming unreasonably and without proper cause that the Villa Class Action was barred by the Retroactive Date;

   (c)   By refusing to defend Phoenix California against the Villa Class Action;

   (d)   By refusing to pay Phoenix California "Loss" in relation to the Villa Class Action.

116.   Where a policyholder mounts a defense at the policyholder's own expense following the insurance company's refusal to defend, the policyholder is entitled to obtain as damages the costs of the defense.

117.   An insurance company that has breached an implied covenant to a policyholder is liable to the policyholder for all reasonable and necessary attorneys' fees that the policyholder incurs to recover policy benefits.

118.   As a direct and proximate result of Greenwich's conduct, Phoenix California has been required to retain attorneys to obtain its rightful benefits under the Renewal Policy.

### EIGHTH CAUSE OF ACTION
### FOR NEGLIGENCE
### (Against Dorfman)

119.   Phoenix incorporates paragraphs 1 through 118 above.

120.   An insurance broker owes a duty to use reasonably care, diligence, and judgment in procuring insurance for a client.  A broker may be held liable for breaching this duty when the broker –

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

COMPLAINT

(a)   Has a long-term relationship with the client, knows the risks involved in the client's business and the client's concerns regarding adequate coverage, and fails to explain the limited coverage actually obtained;

(b)   Misrepresents the nature, extent or scope of coverage and the client relies to its detriment on that misrepresentation;

(c)   The client makes a specific request for or inquiry about a particular type or extent of coverage and the broker fails to provide it; or

(d)   The broker assumed an additional duty either by express agreement or by holding himself out as having expertise in a given field of insurance sought by the insured, and failed to fulfill that duty.

121.   When Dorfman recommended the Greenwich Policy, Dorfman had a long-term relationship with Phoenix and its affiliate and predecessor entities, and, in particular, with Phoenix's principal, Chris Antonucci ("Antonucci"). Dorfman knew the risks involved in Phoenix's business and in Phoenix's concerns regarding adequate coverage. In particular, Dorfman knew that Phoenix needed EPL coverage for Phoenix California.

122.   Dorfman procured the Travelers EPL policy which expressly covered Phoenix California. When Dorfman procured the Greenwich Initial Policy, Dorfman knew that Phoenix California needed EPL coverage. Antonucci specifically requested that Dorfman provide Phoenix California with EPL coverage and Dorfman specifically agreed to provide Phoenix California with EPL coverage. Dorfman also knew that Phoenix California was doing business in California and was exposed to a great deal of employment law risk, because California is unique among jurisdictions nationwide and features a comprehensive Labor Code. Dorfman assisted Phoenix in applying for the Greenwich policy and Phoenix executed applications and returned them to Dorfman for submission to Greenwich.

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

23

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

The applications indicated Phoenix's intent to obtain EPL coverage for Phoenix California.

123.    After Dorfman procured the Initial Policy, Phoenix believed that Phoenix California had EPL coverage and Dorfman led Phoenix to believe that Phoenix California had EPL coverage.  At no point did Dorfman suggest or indicate to Phoenix that Phoenix California did not have EPL coverage after the Travelers policy expired.

124.    Greenwich contends that Phoenix California is not an "insured" under the Initial Policy.  If Greenwich is correct, then Dorfman is liable to Phoenix for all damages Phoenix has incurred to the extent Phoenix California is not an "insured" under the Initial Policy.

125.    Greenwich contends that the Retroactive Date in the California Policy and the Renewal Policy bars coverage of the Ramos Class Action, and the Villa Class Action.  If Greenwich is correct, then Dorfman is liable to Phoenix for all damages Phoenix has incurred to the extent the Retroactive Date bars coverage of those Actions.

126.    Depending therefore on whether Greenwich is correct, Dorfman will have breached duties to Phoenix in the following respects:

(a)    Dorfman failed to provide Phoenix with EPL coverage when Phoenix had specifically requested it, when Dorfman claimed expertise in procuring EPL coverage, and when Dorfman knew Phoenix's insurance needs;

(b)    Dorfman failed to explain the limited coverage actually obtained, despite having a long-term relationship with Phoenix, despite knowing the risks involved in Phoenix's business, and despite knowing Phoenix's concerns regarding adequate coverage;

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(b)  Dorfman misrepresented the nature, extent or scope of coverage to Phoenix and Phoenix relied to its detriment on that misrepresentation;

(c)  Dorfman procured the California Policy without explaining to Phoenix why it did so and the implications for Phoenix in doing so.

127.  A policyholder who through the negligence of its insurance broker has been required to act in the protection of its interests by bringing an action against its insurance company is entitled to recover reasonable compensation for loss of time, attorneys' fees and other expenditures thereby suffered or incurred in that action.

128.  Phoenix has incurred, and will continue to incur, attorneys fees in trying to assert its coverage rights as against Greenwich.  Because Greenwich has denied coverage of the Class Actions, Phoenix is entitled to recover as damages against Dorfman its loss of time, attorneys' fees, and other expenditures incurred in seeking to obtain that coverage.

## PRAYERS FOR RELIEF

WHEREFORE PLAINTIFFS PHOENIX HOLDING GROUP, LLC, and PHOENIX WAREHOUSE OF CALIFORNIA, LLC, pray for judgment against the Defendants GREENWICH INSURANCE COMPANY and THE DORFMAN ORGANIZATION, LTD. as follows:

ON THE FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF:

1.  An Order declaring that:

(a)  Phoenix California is an "insured" under the Initial Policy;

(b)  Alternatively, if Phoenix California is not an "insured" under the Initial Policy, then Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the California Policy for the Espinoza Class Action and the Duron Action;

25

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(c)     Alternatively, if Phoenix California is not an "insured" under the Initial Policy, then Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the California Policy for the Ramos Class Action;

(d)     Alternatively, if Phoenix California is not an "insured" under the Initial Policy, then Greenwich is estopped from denying defense and indemnity benefits to Phoenix California under the Renewal Policy for the Villa Class Action;

(e)     The Class Actions allege a "Wrongful Employment Act" under the respective Policies;

(f)     The FLSA Exclusion does not exclude any of the following claims made in the Class Actions:

(i)      Lost overtime under L.C §§ 510, 1194, or 1199;

(ii)     Lost meal periods under L.C. §226.7;

(iii)    Lost rest periods under L.C. §226.7;

(iv)     Failure to provide itemized wage statements under L.C. §226(a);

(v)      Failure to provide wages due on termination under L.C. §203;

(vi)     Unfair competition under Cal. Bus. & Prof. Code §17200.

(g)     The FLSA Endorsement under the Initial Policy entitles Phoenix California to $100,000 in "Defense Expenses" for claims excluded by the FLSA Exclusion;

(h)     Greenwich is estopped from denying Phoenix California $100,000 in "Defense Expenses" for claims excluded by the FLSA Exclusion and that otherwise were made and reported within the periods for the California Policy and the Renewal Policy;

**COMPLAINT**

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(i)    Greenwich is estopped from including the Retroactive Date in the California Policy and the Renewal Policy;

(j)    Alternatively, the Retroactive Date does not bar coverage of the Ramos Class Action or the Villa Class Action, to the extent those Actions include claims arising after the Retroactive Date

2.    Such other relief as is just and proper.

ON THE <u>SECOND CAUSE OF ACTION</u> FOR BREACH OF CONTRACT:

1.    Compensatory damages in the form of –

     (a)    Defense costs incurred, and to be incurred, in the Espinoza Class Action;

     (b)    Defense costs incurred in the Duron Action

     (c)    Indemnification for the Settlement Agreement in the Duron Action;

2.    An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Espinoza Class Action;

3.    Loss of interest and other amounts to be proven at trial;

4.    Pre-judgment interest;

5.    Such other relief as is just and proper.

ON THE <u>THIRD CAUSE OF ACTION</u> FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING:

1.    Compensatory damages in the form of –

     (a)    Defense costs incurred, and to be incurred, in the Espinoza Class Action;

     (b)    Defense costs incurred in the Duron Action

27

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

  (c) Indemnification for the Settlement Agreement in the Duron Action;

2. An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Espinoza Class Action;

3. Attorneys' fees;

4. Loss of interest and other amounts to be proven at trial;

5. Pre-judgment interest;

6. Such other relief as is just and proper.

ON THE <u>FOURTH CAUSE OF ACTION</u> FOR BREACH OF CONTRACT:

1. Compensatory damages in the form of defense costs incurred, and to be incurred, in the Ramos Class Action;

2. An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Ramos Class Action;

3. Loss of interest and other amounts to be proven at trial;

4. Pre-judgment interest;

5. Such other relief as is just and proper.

ON THE <u>FIFTH CAUSE OF ACTION</u> FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING:

1. Compensatory damages in the form of defense costs incurred, and to be incurred, in the Ramos Class Action;

2. An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Ramos Class Action;

28

3. Attorneys' fees;

3. Loss of interest and other amounts to be proven at trial;

4. Pre-judgment interest;

5. Such other relief as is just and proper.

ON THE <u>SIXTH CAUSE OF ACTION</u> FOR BREACH OF CONTRACT:

1. Compensatory damages in the form of defense costs incurred, and to be incurred, in the Villa Class Action;

2. An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Ramos Class Action;

3. Loss of interest and other amounts to be proven at trial;

4. Pre-judgment interest;

5. Such other relief as is just and proper.

ON THE <u>SEVENTH CAUSE OF ACTION</u> FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING:

1. Compensatory damages in the form of defense costs incurred, and to be incurred, in the Villa Class Action;

2. An Order requiring Greenwich to indemnify Phoenix California for any settlement or judgment obtained against it in the Villa Class Action;

3. Attorneys' fees;

4. Loss of interest and other amounts to be proven at trial;

5. Pre-judgment interest;

6. Such other relief as is just and proper.

ON THE <u>EIGHTH CAUSE OF ACTION</u> FOR NEGLIGENCE:

1. Compensatory damages in the form of –

29

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

The Alvarez Firm, a Law Corp.
24005 Ventura Blvd.
Calabasas, CA 91302

(a)   Defense costs incurred, and to be incurred, in the Espinoza Class Action;

(b)   Defense costs incurred in the Duron Action

(c)   Indemnification for the Settlement Agreement in the Duron Action;

(d)   Defense costs incurred, and to be incurred, in the Ramos Class Action;

(e)   Defense costs incurred, and to be incurred, in the Villa Class Action;

2.   An Order requiring Dorfman to indemnify Phoenix California for any settlement or judgment obtained against it in the Espinoza Class Action, the Ramos Class Action, and the Villa Class Action;

3.   Loss of time, attorneys' fees, and other expenditures incurred in pursuing coverage of the Class Actions against Greenwich;

4.   Loss of interest and other amounts to be proven at trial;

5.   Pre-judgment interest;

6.   Such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Phoenix hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  March 4, 2015                    THE ALVAREZ FIRM

                                                          /s/ David A. Shaneyfelt
                                                          David A. Shaneyfelt
                                                          Attorney for Phoenix Holding Group,
                                                          LLC, and Phoenix Warehouse of
                                                          California, LLC

COMPLAINT